IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

S.L. on behalf of minor K.A.,                          )
                                                       )          Case No.  23CV39908
                                                       )
                                  Plaintiffs           )
                                                       )
            v.                                         )          SUMMONS
                                                       )
OMEGLE.COM LLC, an Oregon                              )
Limited Liability Company,                             )
                                                       )
                                  Defendants.          )

**TO:      OMEGLE.COM LLC**
           **c/o Registered Agent:**        **c/o Northwest Registered Agent LLC**
                                            **2355 State St, Suite 101**
                                            **Salem, OR 97301**

You are hereby required to appear and defend the complaint filed against you in the above-entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.

### NOTICE TO THE DEFENDANT:  READ THESE PAPERS CAREFULLY!

**You must "appear" in this case or the other side will win automatically.  To "appear" you must file with the court a legal paper called a "motion" or "answer."  The "motion" or "answer" must be given to the court clerk or administrator within thirty (30) days along with the required filing fee.  It must be in proper form and have proof of service on the plaintiff's attorney, or if the plaintiff does not have an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.**

                                            _/s/ Matthew P. Bergman_
                                            SIGNATURE OF ATTORNEY FOR PLAINTIFFS
                                            Matthew P. Bergman, OSB No. 894335
                                            SOCIAL MEDIA VICTIMS LAW CENTER
                                            600 1st Ave, Ste 102 - PMB 2383
                                            Seattle, WA  98101          Phone (206) 741-4862

STATE OF WASHINGTON            )
                               ) ss.
County of King                 )

          I, the undersigned attorney of record for the plaintiffs, certify that the foregoing is an exact and complete copy of the original summons in the above-entitled action.

                                            _/s/ Matthew P. Bergman_
                                            ATTORNEY OF RECORD FOR PLAINTIFFS

TO THE OFFICER OR OTHER PERSON SERVICING THIS SUMMONS:  You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein; upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

                                            _/s/ Matthew P. Bergman_
                                            ATTORNEY FOR PLAINTIFFS

Post office address at which papers in the above-entitled action may be served by mail:

SOCIAL MEDIA VICTIMS LAW CENTER
600 1st Ave, Ste 102 - PMB 2383
Seattle, WA  98101
Phone (206) 741-4862

EXHIBIT 1
Page 1 of 22

FILED

2023 SEP 29 PM 3: 19

4TH JUDICIAL DIST.

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| S.L. on behalf of minor **K.A.**, | NO. 23CV39908 |
| Plaintiffs, | **COMPLAINT FOR PERSONAL INJURIES** |
| v. | (Products Liability) |
| **OMEGLE.COM LLC**, an Oregon Limited Liability Company, | JURY TRIAL REQUESTED |
| Defendant. | TOTAL PRAYER: $22,000,000 |
| | **CLAIM NOT SUBJECT TO MANDATORY ARBITRATION** |
| | FILING FEE OF $1,178 COLLECTED PURSUANT TO ORS 21.160(1)(d) |

COMES NOW Plaintiff S.L., in her capacity as representative for minor, K.A., and claims and alleges as follows:

## I.   PARTIES

1.1     Plaintiff K.A. was born in 2008 and is a minor.  Plaintiffs wish to proceed using pseudonyms because of K.A.'s minor status and the sensitive and highly personal nature of this case, which involves allegations of sexual exploitation and grooming.

1.2     Defendant OMEGLE.COM LCC ("Omegle") is a Limited Liability Company

COMPLAINT FOR PERSONAL INJURIES - 1

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE. STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 2 of 22

organized in the State of Oregon with its principal place of business in Florida.

## II.   JURISDICTION AND VENUE

2.1     This Court has jurisdiction in this action because, at all material times, Defendant Omegle resided in and/or conducted regular and sustained business activities in Oregon to which the claims herein are related, and Defendant Omegle may be served with process in Oregon.

2.2     Venue in this Court is proper because, at all material times, Defendant Omegle resided in and/or conducted regular and sustained business activities in Multnomah County, Oregon.

## III.   FACTS

### Omegle Product Design and Programming

3.1     This is a product liability case against a company that profits from procuring children for sexual predators.

3.2     Omegle is a free online website that randomly pairs users so they can livestream video chat with a stranger.

3.3     Originally launched in 2009, Omegle is known as one of the most popular chat sites with users from countries all over the world and about 66,000,000 monthly visits. At any given time, there are typically around 50,000 users online ready to chat.

3.4     Leif K-Brooks founded Omegle and remains CEO today.

3.5     According to published data, Omegle usage doubled during the pandemic between January 2020 and January 2021.

3.6     Omegle's innovation to the world of chatting apps is its complete user anonymity, designed to make connections quick, convenient, and discreet, and its Russian Roulette style matchmaking feature. Omegle identified users it connected as "You" and "Stranger."

COMPLAINT FOR PERSONAL INJURIES - 2

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 3 of 22

3.7     Omegle's anonymized stranger-matching is integral to its business model which, at all times relevant, encouraged its users to "Talk to strangers!"  One tagline, dated October 27, 2022, reads, "The Internet is full of cool people; Omegle lets you meet them. When you use Omegle, we pick someone else at random so you can have a one-on-one chat."

🍩 Omegle: Talk to strangers!

omegle.com

October 27, 2022 - The Internet is full of cool people; **Omegle** lets you meet them. When you use **Omegle**, we pick someone else at random so you can have a one-on-one chat.

3.8     Omegle is designed for users to cycle quickly through strangers. As soon as a user tires of one stranger Omegle connects them with they can click a "stop" button and be transported to the screen of a different Omegle user, who likewise appears on their screen.

3.9     Omegle often is used for adult individuals seeking an immediate online sexual connection with a stranger.  Omegle also often is used by children, who do not have the capacity or ability to understand the dangers of being paired with adult individuals seeking an immediate online sexual connection with a stranger.

3.10    Within seconds of using Omegle, users likely will come face-to-face with nude users whether they want to or not.  See Joe Tidy, *"Omegle: Children expose themselves on video chat site,"* BBC News, (February 18, 2021), https://www.bbc.com/news/technology-56085499, (last visited September 26, 2023) (in a two-hour period, BBC was connected at random by Omegle to twelve masturbating men, eight naked men, and seven pornography advertisements).

3.11    At times relevant, Omegle has acknowledged that its product is home to predators but puts the onus on its users to not be preyed upon. For example, up through May 2021, its homepage read "Predators have been known to use Omegle, so please be careful."

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 4 of 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**omegle**    **Talk to strangers!**

Omegle's mobile site is awesome on a smartphone or tablet!

Omegle *(oh·meg·ull)* is a great way to meet new friends. When you use Omegle, we pick someone else at random and let you talk one-on-one. To help you stay safe, chats are anonymous unless you tell someone who you are (not suggested!), and you can stop a chat at any time. Predators have been known to use Omegle, so please be careful.

If you prefer, you can add your interests, and Omegle will look for someone who's into some of the same things as you instead of someone completely random.

By using Omegle, you accept the terms at the bottom. You must be 18+ or 13+ with parental permission.

### Video is monitored. Keep it clean   *

18+: ( Adult )    ( Unmoderated Section )

What do you wanna talk about?        Start chatting:

Add your interests (optional)          Text    or   Video

Add my Facebook likes as topics       Spy (question) mode       Flash 10

▶        College student chat

3.12    Omegle allows anybody to use its product and requires no registration, name, or

age verification. Nor does it require users to register using other industry-standard verifiers such

as an email, phone number, or social media account.

3.13    Omegle's content moderation practices are reckless to the point of being

altogether absent. For example, at times relevant, Omegle's homepage provided that "Omegle

video chat is moderated but no moderation is perfect." It provided in large lettering toward the

bottom of the page: "Video is monitored. Keep it clean!" Despite its claim of not "perfect"

moderation, the site also confusingly labels its Video chat button as the "Unmoderated section."

### Video is monitored. Keep it clean 

What do you wanna talk about?        Start chatting:

Add your interests (optional)          Text    or   Video

▶        College student chat         Spy (question) mode    Unmoderated section



COMPLAINT FOR PERSONAL INJURIES - 4

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 · PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 5 of 22

1        3.14    Omegle knows children use its product. Currently, Omegle purports to require

2  users to be over 18. Plaintiffs do not know exactly when or how that change was made but

3  believe that it went into effect sometime in or after October 2022. Plaintiffs also do not know

4  whether Omegle took any action as to existing users under the age of 18 at that time but are not

5  aware of any such action. Accordingly, and at all times relevant, Omegle purported to allow

6  children as young as 13 to use its product and did so despite there being an extraordinarily high

7  probability that within just a couple matches a child would likely be face to face with a

8  masturbating adult. Omegle also, and in practice, knew or had reason to know that children

9  under 13 were using its product. Omegle likewise knows that children under 18 continue to use

10  its product to this day. A simple test of the Omegle product proves this fact, and there are

11  numerous online videos reflecting such use by minors, despite Omegle's claim that it currently

12  has a minimum age requirement of 18. *See, for example,*

13  *https://www.youtube.com/watch?v=X17PMF0DRS8* (YouTube video posted August 12, 2023,

14  showing Omegle session with several minor users being randomly connected to user).

15        3.15    At times relevant, the sole warning for kids on Omegle's website stated "[y]ou

16  must be 18+ or 13+ with parental permission and supervision to use Omegle." Omegle does not

17  actually require children to state their age or birth date to register for the product or confirm they

18  have parental permission. Any attempt to claim parental permission also is legally deficient

19  because parents cannot provide legal authorization for their children to become crime victims.

20        3.16    Unlike many other online platforms, Omegle is accessible only through its own

21  website. Consumers are at last verified when applications are uploaded through a marketplace

22  like the App Store or Google Play, but not in the case of Omegle.

23

EXHIBIT 1
Page 6 of 22

3.17    Omegle's revenue model appears to derive from selling user and usage data and by selling advertisements on its website. The advertisements often are for pornographic and adult web cam sites and similar explicit subject matters. For example, and on information and belief, below is a screenshot of an Omegle.com screen on July 7, 2021, offering users the chance to "cum with strangers!"



3.18    At all times relevant, Ads for websites like heycum.com were visible even to the 13-year-olds that Omegle said could use its product with parental permission.

3.19    At all times relevant, Omegle represented to users in its privacy and community standards page that it protects users and values the web site's "safety, security and integrity."

3.20    At all times relevant, Omegle represented its ability to ban or deny access to offending or unauthorized accounts in its Terms and Conditions of Service ("Terms of Service") dated July 1, 2014 (Wayback Machine,

http://web.archive.org/web/20140701135308/http://www.omegle.com/).

COMPLAINT FOR PERSONAL INJURIES - 6

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 7 of 22

3.21    Omegle has been the subject of warnings from cybercrime experts and law enforcement officers all over the world yet took no known action to meaningfully mitigate the threat of child exploitation on and facilitated by Omegle.

3.22    The failures of Omegle have been reported in numerous media outlets. *See, e.g.,* Joe Tidy, "Omegle: Children expose themselves on video chat site," BBC News (February 18, 2021) https://www.bbc.com/news/technology-56085499 (last visited September 26, 2023); basal analytics, "Are your kids Secretly using Omegle? Is Omegle Safe for children?" Kiddoware (April 21, 2021) https://kiddoware.com/are-your-kids-secretly-using-omegle-is-omegle-safe-for-children/ (last visited September 26, 2023); Olivia Gantzer, "Thames Valley Police warning about new app, Omegle," BRACKNELL NEWS (June 7, 2021) https://www.bracknellnews.co.uk/news/18501651.thames-valley-police-warning-new-appomegle/ (last visited September 26, 2023); Matthew Innes, "Is Omegle Safe?", Security Gladiators (December 4, 2021) https://securitygladiators.com/platform/omegle/safety (last visited September 26, 2023); Carlo Garcia, "Omegle: the Lesser Known Chat Site that Endangers Children," Parentoligy (March 10, 2022) https://parentology.com/omegle-the-dangerous-new-chat-site-where-kids-meet-strangers/ (last visited September 26, 2023).

3.23    Upon information and belief, Omegle's owners and operators make little to no effort to screen or monitor the activities of its members, despite representations to the contrary, or to implement a working report function allowing users to flag abuse. However, they are aware of the dangerous uses of their product given the warning Omegle removed sometime in mid-2022 stating: "Predators have been known to use Omegle, so please be careful."

3.24    Omegle also does not utilize proven and available software that would allow it to identify and block abusive users or identify and deny access to minors. The latter includes but is

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 · PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 8 of 22

1    not limited to commercially available age verification tools enabling companies like Omegle to

2    identify underage users without collecting and/or retaining personal data.

3        3.25    Instead, Omegle designed and operates its product to randomly pair users,

4    including children with predatory adults.

5                **Omegle Matched Predators to Minor Plaintiff K.A.**

6        3.26    In the Fall of 2020, Omegle paired then eleven-year-old K.A. with a predatory

7    adult ("First Omegle Predator"). The First Omegle Predator knew that K.A. was under the age

8    of 13, and he continued the conversation anyway and convinced K.A. that it was okay for them

9    to keep communicating.

10       3.27    The First Omegle Predator convinced K.A. that she could trust him and talked her

11   into opening a Discord account so that they could stay in contact and get to know each other

12   better. Then, over a period of months, he groomed and forced K.A. to take and send naked

13   photos and videos of herself engaging in sex acts. K.A. still will not talk with her mother about

14   the full extent of what was done to her, other than that she did "terrible" things with the First

15   Omegle Predator.

16       3.28    K.A. began suffering from increased anxiety, engaged in serious acts of self-

17   harm, and expressed suicidal ideation. Her access to electronic devices was further restricted,

18   however, her parents did not even know about the Omegle product at that time because of

19   Omegle's decision to distribute its product through its own website. They also could not prevent

20   her from accessing Omegle outside their home nor could they be sure that they were preventing

21   access inside their home, including because of school devices and the accessibility of electronic

22   devices from friends and other sources.

23

COMPLAINT FOR PERSONAL INJURIES - 8

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 9 of 22

3.29    For example, in October of 2021, when K.A. was still only twelve years old, she accessed Omegle while visiting a friend and, once again, Omegle randomly paired her with adult predators who encouraged her to engage in sexual acts despite knowing she was a minor.

3.30    In September or early October 2022, Omegle then paired thirteen-year-old K.A. with another predatory adult ("Second Omegle Predator"), who was forty-three years old, though he claimed to be much younger. The Second Omegle Predator knew that K.A. was only thirteen years old, and he continued the conversation anyway and convinced K.A. that it was okay for them to keep communicating.

3.31    Once again, this predator convinced K.A. to move their conversation to Discord, where he initiated sexual dialogue, grooming K.A., sending her videos of himself masturbating, and convincing her to take and send explicit and/or naked photos and to engage in sexual discussions with him.

3.32    K.A.'s mom found out about the Second Omegle Predator after she discovered concerning content on her child's device, contacted the police, and was alerted to what was happening by law enforcement.

3.33    Law enforcement then posed as K.A., communicated with the Second Omegle Predator, and arrested him in February 2023. They arrested him in the neighborhood where K.A. and her family reside and while he was attempting to meet K.A. in person for purposes of sex. The Second Omegle Predator exchanged more than 700 messages with K.A., and currently is awaiting trial.

3.34    Plaintiffs seek recovery against Omegle on their claims for:

    a.    Product liability arising out of defects in design and defects in warning; and

    b.    Negligence in design, warning, and instruction.

COMPLAINT FOR PERSONAL INJURIES - 9

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 · PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 10 of 22

3.35    K.A. has been hospitalized multiple times in connection with self-harm and suicidal ideation, as well as suicide planning. She has undergone sedation and being restrained due to the severe mental health harms she suffered. Her education has been disrupted, and her relationship with her parents and friends strained.

3.36    K.A. is struggling in every aspect of her life, but worse, she still is only fourteen years old and there is no way to know how severe the harms to her will be from these experiences and for the rest of her life. No amount of money spent, therapy, or time can erase the trauma or abuse itself.

3.37    Omegle also has caused economic damages to K.A.'s parents, including lost wages, insurance, and out-of-pocket medical costs, as well as serious trauma resulting from their child causing self-harm, suicide threats and hospitalizations, and severe sexual abuse that occurred to her as direct result of Omegle's design and programming decisions. S.L., for example, has suffered PTSD, panic attacks, depression, and other mental health harms requiring treatment – none of which were present prior the above-described harms. These types of harms to parents and family are the foreseeable and natural result of harms to a minor child.

## Omegle's Negligence

3.38    Omegle's negligence caused the harms to Plaintiffs.

3.39    Omegle knew that predators were using its product to groom and exploit children sexually. By failing to take action to prevent predators from carrying out these crimes against helpless children on and facilitated by Omegle and by failing to cure its negligent design and manufacture, Omegle empowered and incentivized predatory users to continue their abusive and malicious use of the Omegle product.

COMPLAINT FOR PERSONAL INJURIES - 10

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 · PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 11 of 22

3.40    Prior to 2020, when the Omegle connected the First Omegle Predator to K.A., a series of news articles had been published about the dangers of Omegle specific to exploitation and abuse. *See, e.g.,* Brigida Mack, "Mom calls chat website a 'pedophile's paradise'," WBTV (July 16, 2011), https://www.wbtv.com/story/15091703/webiste-a-pedophiles-paradise/ (last visited September 26, 2023); Natasha Chen, "Parents Find Out Daughters Are Targeted Through Online Chat Site," NEWS CHANNEL 3 (October 18, 2012), https://wreg.com/news/parents-find-out-daughters-are-targeted-through-online-chat-site/ (last visited September 26, 2023); "OK Mother Says Teen Was Sexually Assaulted By Man She Met Online," NEWS9 (October 21, 2013), https://www.news9.com/story/5e35a7af83eff40362be743b/ok-mother-says-teen-wassexually-assaulted-by-man-she-met-online, (last visited September 26, 2023).

3.41    But also, well prior to late 2022 – when Omegle connected the Second Omegle Predator to then thirteen-year-old K.A., Omegle already was subject to litigation for these exact types of harms. *See A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814 (D. Or. 2022) (July 13, 2022, Order denying Omegle's Motion to Dismiss under similar facts as alleged here). Omegle could have taken unilateral steps to prevent harms to underage children it knew to be accessing its product at that time but did not.

3.42    Plaintiffs S.L. and her minor child K.A. were unaware of these news articles and were unaware of the litigation pending in 2022 while, on information and belief, Omegle was aware of both.

3.43    Between May of 2015 and May of 2021, the text on Omegle's homepage included a sentence that read: "Predators have been known to use Omegle, so please be careful." Instead of serving as a warning, the statement is an admission that Omegle was well aware that crimes to children were occurring on its platform.

EXHIBIT 1
Page 12 of 22

3.44     Omegle's users, which they encouraged at that time to be as young as thirteen but that, in reality, were often as young as Plaintiff when she was eleven years old, or even younger, have no cognitive or judgment ability to evaluate such statements or make informed decisions to consent to them. While many parents of such minors, including K.A.'s parents, have no reason or even means to know that their children are using Omegle.

3.45     K.A.'s parents took steps to monitor and control their child's access to online platforms. They often identified and were able to monitor and/or demand access to social media apps to which they had not consented but would then discover on her device. Not, however, in the case of Omegle. Because Omegle distributed its product through its own website, rather than the App Store, they never found it on any of her devices. Instead, they learned about the First Omegle Predator and other abuses occurring to their child from the parents of friends in whom K.A. had confided; and they learned about the Second Omegle Predator from law enforcement, after discovering inappropriate material on K.A.'s device and turning it over to the police. It was only then that they learned about the Omegle product specifically.

3.46     Despite years of child abuse and exploitation facilitated by Omegle, and Omegle's knowledge of the same, Omegle did nothing material during the times relevant to remove or restrict child access or to otherwise address the danger Omegle created.

3.47     Omegle's negligent design and manufacture created predictable consequences in ways that encouraged dangerous behavior. No reasonable measures were taken at any time relevant to this Complaint to ensure that the product's design was more useful than it was foreseeably dangerous. It was not, and Omegle had reason to know it was not.

3.48     Omegle's product operated precisely as Omegle designed it – to facilitate procurement of children by adult predators in a manner they believed to be anonymous and safe.

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 13 of 22

The First Omegle Predator has not yet been caught, though Plaintiffs belief that law enforcement is still trying, while the Second Omegle Predator was caught only because S.L. was able to find evidence of harms through means other than Omegle and provided that to law enforcement, who then pretended to be K.A.

3.49    Omegle failed to take any number of unilateral, ameliorative actions it could and should have taken to prevent these harms to children like and including K.A. such as:

   a. Identifying and banning predatory users through the language detected in chats or its video monitoring function it purports to employ,

   b. Providing working and reasonably accessible reporting mechanisms, including but not limited to a "Report" or "Abusive Content" button on the chat screen,

   c. Changing its policy to only allow adults 18 and older to use the website (on information and belief, this change was made only after the harms at issue in this case occurred) combined with integrating an effective age verification mechanism to ensure that minors are not using the unmonitored video section of the site,

   d. Requiring users to register their name or phone number with the site, and verifying the same, so that user misconduct can be traced by site administrators,

   e. Distributing its product through third party marketplaces like Apple and Google where customers are verified and downloads are recorded, and/or

   f. Staffing a community standards and safety department with human beings.

These are just some identifiable examples, and Plaintiffs anticipate being able to identify other, unilateral safety measures Omegle could have taken – safety measures that would not require Omegle to review or censor any third-party content – after discovery in this case. Currently, Omegle is the only one with information as to its specific design and programming decisions.

COMPLAINT FOR PERSONAL INJURIES - 13

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 · PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 14 of 22

1    3.50    Industry standards, common practices, and common-sense measures all provide

2  methods by which Omegle could have mitigated the unsafe design of its software.

3                                           **Damages**

4    3.51    As a result of Defendant Omegle's wrongful conduct, Plaintiff K.A. was sexually

5  exploited by multiple Omegle predators, and suffered in the past and will suffer in the future,

6  physical and psychological injuries consisting of depression, anxiety, post-traumatic stress

7  disorder, sleep and eating disturbances, shame, lack of trust, issues with sexuality, and difficulty

8  with intimate relationships.

9    3.52    As a result of Defendant Omegle's wrongful conduct, Plaintiff S.L. suffered

10  severe emotional and financial harms arising from the trauma and abuse inflicted on her minor

11  child as well as the significant, associated medical and legal costs and loss of income. Examples

12  of medical costs include multiple treatment centers with Plaintiffs' out-of-pocket costs ranging

13  from $1,200 to $3,000 per center, over $7,000 in ambulance charges, over $4,500 in attorney and

14  advocate costs relating to things like K.A.'s education and insurance, and, currently, $300/week

15  for ongoing counseling that insurance does not cover. These are just some examples, and

16  Plaintiffs estimate their out-of-pocket costs from October 2021 through December 2022 alone at

17  $22,634.76, not including lost income.

18    3.53    All of these injuries further have caused and will cause Plaintiffs non-economic

19  and economic damages in the approximate amount of $22,000,000.00, the exact amount of

20  which to be determined by a jury at trial.

21    3.54    Pursuant to ORS 31.725(2), Plaintiff does not request an award of punitive

22  damages at this time, but Plaintiff reserves the right to seek leave to amend her complaint to

23  request punitive damages in the future pursuant to Oregon law and on the basis that Defendant

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-1862

EXHIBIT 1
Page 15 of 22

Omegle acted with an outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of others, including Plaintiffs.

3.55    Plaintiffs are entitled to prejudgment interest calculated from the time that the amount of each Defendants' liability is reasonably ascertained or ascertainable by the parties, e.g., upon the receipt of a jury verdict determining the amount of Plaintiff's damages and/or Defendants' receipt of evidence establishing the amount of Plaintiff's economic damages.

## IV.    CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

## Product Liability – Defect in Design

4.1    Plaintiffs reallege the facts set forth in all preceding paragraphs as if stated fully herein, including paragraphs 3.1-3.55, and further allege as follows:

4.2    Omegle designed, coded, engineered, manufactured, produced, assembled, and placed its product, Omegle, in the stream of commerce. At all times relevant, Omegle was defectively designed. Namely, the combination of the website's user anonymity, Omegle's random pairing of strangers feature, and the absence of age restrictions and/or verification amount to a design defect. This design defect creates the predictable consequence of attracting both unsuspecting children and predatory adults, thereby facilitating and encouraging dangerous behavior and harm to children using the product.

4.3    Omegle's defective design encourages sexual interactions among people of all ages and by having no age restrictions, it creates a high probability that children will be matched with predatory adults and violated by either exposing themselves or witnessing adults exposing their genitals.

COMPLAINT FOR PERSONAL INJURIES - 15

EXHIBIT 1
Page 16 of 22

SOCIAL MEDIA VICTIMS LAW CENTER
600 1st AVE, STE 102 · PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

4.4    Omegle's defective design and regular usage makes breaking the law inevitable – underage users are statistically likely to be matched with nude adults and pedophiles. And adult users, whether clothed or not are statistically likely to be matched with nude children.

4.5    Omegle's defective design is hospitable to child predators making it foreseeable that the product will be used by predators for immediate sexual moments or to lure children into abusive relationships as happened to K.A. Omegle is therefore a launchpad for predators to target the children they then continue to abuse.

4.6    Omegle's defective design renders the product unreasonably dangerous.

4.7    As a direct and proximate cause of Defendant's design, coding, engineering, manufacture, testing, inspection, production, assembly, and sale, Plaintiff sustained permanent injuries and suffered extreme pain and agony.

## SECOND CLAIM FOR RELIEF

### Product Liability – Defect in Warning

4.8    Plaintiffs reallege the facts set forth in all preceding paragraphs as if stated fully herein, including paragraphs 3.1-3.55, and further allege as follows:

4.9    Omegle designed, coded, engineered, manufactured, produced, assembled, and placed its product in the stream of commerce. At times relevant, Omegle contained a defective condition in that use of it website should have been permitted only to users 18 and older. Omegle should have properly warned users to notify them that children are strictly prohibited.

4.10    Instead, and at times relevant to this Complaint, Omegle specifically permitted children 13 and older to use its product and featured an ineffectual and lighthearted warning that understated the risk of using its product as a child. Omegle further knew at all times relevant to this Complaint that it was allowing in practice users even younger than 13 to use its product.

COMPLAINT FOR PERSONAL INJURIES - 16

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 17 of 22

1    4.11    Omegle also failed to warn its users that there were no remedies to be sought

2  when one witnesses a user who misuses the website. On the contrary, Omegle represented to

3  users that it was monitoring all activities on its site, which was not true. Minor users reasonably

4  relied on such representations, resulting in a false and incredibly dangerous sense of safety.

5  Omegle likewise failed to warn its users that its operators do not and will not take action to ban

6  abusive users.

7    4.12    The warning defect makes Omegle unreasonably dangerous.

8    4.13    Omegle was designed and manufactured by Defendant and, to Plaintiffs'

9  knowledge, has not been materially changed such that it is in substantially the same condition as

10  it was at the time of the injury. The only change of which Plaintiffs are aware is that Omegle

11  recently changed its website to provide that you must be 18 or older to use Omegle, however,

12  and as set forth in more detail above, that change was both too late to prevent any of the harms to

13  Plaintiff K.A. and is ineffectual regardless.

14    4.14    There is commercially available technology that Omegle, on information and

15  belief, knows about and could have utilized to make its product exponentially safer to the

16  children from whom it profits.

17    4.15    As a direct and proximate cause of Defendant's design, coding, engineering,

18  manufacture, production, assembly, and sale, Plaintiff sustained permanent injuries and suffered

19  extreme pain and agony.

20                                **THIRD CLAIM FOR RELIEF**

21                                    **Negligent Design**

22    4.16    Plaintiffs reallege the facts set forth in all preceding paragraphs as if stated fully

23  herein, including paragraphs 3.1-3.55, and further allege as follows:

COMPLAINT FOR PERSONAL INJURIES - 17

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 18 of 22

1    4.17    Omegle designed, coded, engineered, manufactured, produced, assembled, and

2  placed the Omegle website in the stream of commerce despite its defective design. Omegle owed

3  a duty to Plaintiff to design the website in such a way that made it safe for its intended use.

4    4.18    Omegle knew or should have known when producing the website that it was

5  designed defectively, creating an unreasonable risk of injury to its users, including Plaintiff K.A.

6  Omegle designed, coded, engineered, manufactured, produced, assembled, and placed the

7  Omegle server-side software in the stream of commerce. Omegle owed a duty to Plaintiffs to

8  design the server-side software in such a way that made it safe for its intended use.

9    4.19    Omegle knew or should have known when producing the server-side software that

10  it was designed defectively, creating an unreasonable risk of injury to its users, including

11  Plaintiff K.A.

12    4.20    Omegle was negligent in failing to properly design, manufacture, and

13  communicate the defect in its product and server-side software to Plaintiffs and other users,

14  creating a clear and immediate risk of serious injury to users such as Plaintiff K.A. As a direct

15  and proximate result, Plaintiffs sustained permanent injuries and suffered extreme pain and

16  agony.

17                              **FOURTH CLAIM FOR RELIEF**

18              **Negligence – Failure to Warn or to Provide Adequate Instruction**

19    4.21    Plaintiffs reallege the facts set forth in all preceding paragraphs as if stated fully

20  herein, including paragraphs 3.1-3.55, and further allege as follows:

21    4.22    Omegle owed a duty to Plaintiffs to only place in the stream of commerce a

22  product containing adequate warning and instruction. Without such warning or instruction, the

23  product is unreasonably dangerous.

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 19 of 22

1    4.23    The product was placed into the stream of commerce by Omegle and was used by

2    Plaintiff K.A. and others in a defective and unreasonably dangerous condition in that it should

3    have contained or been accompanied by warnings and actual safeguards to prevent the use of

4    Omegle by children under 18.

5    4.24    Omegle also failed to warn users that there is no method to report abusive users or

6    to seek relief in the event that one witnesses misuse of the product by another user. On the

7    contrary, Omegle represented to users at all times relevant that it was monitoring all activities on

8    its website, which representations provided children like K.A. with a false and inherently

9    dangerous sense of safety while using the Omegle product.

10    4.25    As a direct and proximate cause of Defendant's negligent failure to provide

11    adequate instruction and warning, Plaintiffs sustained permanent injuries and suffered extreme

12    pain and agony.

13    **FIFTH CLAIM FOR RELIEF**

14    **Negligence**

15    4.26    Plaintiffs reallege the facts set forth in all preceding paragraphs as if stated fully

16    herein, including paragraphs 3.1-3.55, and further allege as follows:

17    4.27    In the alternative to Claims 1-4 above and in the event that Omegle is not

18    considered a "product" under Oregon law.

19    4.28    Omegle failed to exercise reasonable care to provide a reasonably safe service.

20    4.29    Omegle failed to take reasonable measures to provide users with a service more

21    useful than foreseeably dangerous.

22    4.30    Omegle created a system that assisted or aided in child sexual exploitation,

23    including the exploitation of Plaintiff by supplying an anonymous and sexual communication

COMPLAINT FOR PERSONAL INJURIES - 19

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 20 of 22

1 | platform to children while it knew or had reason to know adult predators were likely to use the

2 | platform to target children.

3 | 4.31    Omegle unreasonably created a foreseeable risk of harm that its platform would

4 | injure Plaintiff and was negligent.

5 | 4.32    Omegle matches children with adult predators.

6 | 4.33    Omegle is accessible and advertised to both adults and children.

7 | 4.34    The random pairing function of adults and children and the service's accessibility

8 | to both adults and children work in tandem.

9 | 4.35    Omegle could have satisfied its obligation to Plaintiff by providing a service that

10 | did not match minors and adults.

11 | 4.36    Omegle's matching of adults and children was a substantial contributing causal

12 | factor to the abuse of Plaintiff.

13 | 4.37    Plaintiff has a legally protected interest in being free from sexual exploitation and

14 | trafficking.

15 | 4.38    Plaintiffs' damages include sexual and emotional distress and physical harm, as

16 | well as economic damages arising therefrom.

17 | WHEREFORE, Plaintiffs prays for judgment against Defendant Omegle as follows:

18 | (1)    Non-economic damages in the amount of $22,000,000, the exact amount to be

19 | determined by the jury.

20 | (2)    Medical expenses and lost wages in excess of $100,000, the exact amount to be

21 | itemized and provided by Plaintiffs.

22 | (3)    For pre-judgment, post-verdict, and post-judgment interest; and

23 | (4)    For Plaintiff's costs and disbursements herein.

COMPLAINT FOR PERSONAL INJURIES - 20

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE. STE 102 · PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 21 of 22

1

**CERTIFICATION TO COURT**

2    The undersigned attorney certifies upon reasonable knowledge, information and belief,

3    formed after making such inquiry as is reasonable under the circumstances, that this document is

4    not presented for any improper purpose, that the legal positions contained herein are warranted

5    by non-frivolous application or modification of existing law, and that the undersigned reasonably

6    believes that every and all allegations will be supported by evidence after further investigation

7    and discovery.

8    DATED this 28th day of September 2023.

9                                    SOCIAL MEDIA VICTIMS LAW CENTER

10                                   */s/ Matthew P. Bergman*
                                     Matthew P. Bergman, OSB #894335
11                                   Glenn S. Draper, OSB #096624
                                     Sydney Lottes, OSB #231651
12                                   600 1st Ave, Ste 102 - PMB 2383
                                     Seattle, WA 98104
13                                   Phone: (206) 741-4862
                                     Email: matt@socialmediavictims.org
14                                        glenn@socialmediavictims.org
                                          sydney@socialmediavictims.org
15                                        SMI@socialmediavictims.org

16                                   Attorneys for Plaintiffs

17

18

19

20

21

22

23

SOCIAL MEDIA VICTIMS LAW CENTER
600 1ST AVE, STE 102 - PMB 2383
SEATTLE, WA 98104
TELEPHONE: 206-741-4862

EXHIBIT 1
Page 22 of 22